## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DUSTIN REEDER,

          Plaintiff,

     v.

DAMON HAGAN, DEREK
SLAUGHTER, and FRED MILLER,
IV,

          Defendants.

No. 4:20-CV-00591

(Judge Brann)

## MEMORANDUM OPINION

### DECEMBER 28, 2020

## I.     BACKGROUND

On October 15, 2020, Plaintiff, Dustin Reeder filed a two-count First

Amended Complaint against Defendants Damon Hagan, Derek Slaughter, and

Frederick L. Miller IV. Bringing his claim under 42 U.S.C. § 1983, Plaintiff

alleges that Defendants have retaliated against him, in violation of the First

Amendment of the United States Constitution.  This Court previously dismissed

Plaintiff's initial complaint and granted leave to amend.[1]

---

[1]    The Court notes that three complaints were filed in the Middle District of Pennsylvania by
Plaintiff's counsel, James L. Best, Esq., within two weeks of one another.  The three cases
involve similar claims against a similar (though not identical) group of Defendants.  A
comparison of both the First Amended Complaints and briefings filed by the parties serves to
highlight the similarities among the three litigations.  *See Miller v. Campana et al.*, 4:20-cv-
00485 (filed March 25, 2020) and *Mayes v. Campana et al.*, 4:20-cv-00499 (filed March 27,
2020).  The arguments raised in briefing are identical.

On October 29 and 30, 2020, the various Defendants filed motions to dismiss.  Defendants once again argue that Plaintiff's complaint violates Federal Rule of Civil Procedure 8's requirements that a complaint contain a "short and plain statement" of the claim and be "simple, concise, and direct."  Defendants further move, once more, to dismiss the complaint on its merits under FRCP 12(b)(6) for failure to state a claim.

The motion is now ripe for disposition; for the reasons that follow, Defendants' motions to dismiss are granted.  The action is dismissed, but this time, Plaintiff will not receive leave to amend.

## II.     DISCUSSION

### A.     The FAC does not state a claim upon which relief may be granted.

#### 1.     Motion to Dismiss Standard

Under Fed. R. Civ. P. 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[2] and "streamlines litigation by dispensing with needless discovery and factfinding."[3] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive

---

[2]   *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).
[3]   *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

issue of law."[4] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[5]

Following the Roberts Court's "civil procedure revival,"[6] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[7] and *Ashcroft v. Iqbal*[8] tightened the standard that district courts must apply to 12(b)(6) motions.[9]  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[10]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted

---

[4]   *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[5]   *Neitzke*, 490 U.S. at 327.

[6]   Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).

[7]   550 U.S. 544 (2007).

[8]   556 U.S. 662, 678 (2009).

[9]   *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[10]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[11]  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[12]  *Iqbal*, 556 U.S. at 678.

unlawfully."[13] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[14]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[15] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[16]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[17] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[18] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[19]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

---

[13]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[14]   *Twombly*, 550 U.S. at 556.

[15]   *Iqbal*, 556 U.S. at 679.

[16]   *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[17]   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[18]   *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[19]   *Iqbal*, 556 U.S. at 678.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[20]

### 2.    Facts Alleged in the First Amended Complaint

The facts alleged in the FAC, which I must accept as true for the purposes of this motion, are as follows.

Plaintiff was an officer with the Williamsport Bureau of Police ("WBP").[21] During the period of time relevant to the claim, Plaintiff had an "extremely coveted" special assignment.[22]  In late 2015, Gabriel Campana (the then-mayor of Williamsport) hired David Young as the new chief of the WBP.[23]  Chief Young began working in the WBP in April 2016.[24]  It was Chief Young who gave Plaintiff his special assignment.[25]  Chief Young's hiring was unpopular with the "rank and file" of the WBP and its union.[26]  Plaintiff "worked under and closely with" Chief Young and two other Captains (Jody Miller and Don Mayes) and was a "vocal supporter" of the policies of police reform they proposed.[27]  Plaintiff "spoke out

---

[20]  *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).
[21]  Doc. 25 at ¶ 8.
[22]  *Id.* at ¶ 10.
[23]  *Id*. at ¶ 13.
[24]  *Id*.
[25]  *Id*. at ¶ 9.
[26]  *Id*. at ¶ 12.
[27]  *Id*. at ¶ 13.

publically" [sic] in support of reform and against what he believed was unethical behavior by past administrators.[28]

Plaintiff was tasked with administering the Mayor's and Chief's reform goals. His "job was . . . to broadly implement progressive management."[29] According to Plaintiff, however, not everyone was pleased with Chief Young's police administration; its attempts to "revamp the WBP" were met with some level of "animosity."[30] Lawsuits, Equal Employment Opportunity Commission complaints, and other grievances ensued.[31] These filings were intended to put public pressure on the Mayor.[32]

Plaintiff alleges that at some point, the police administration's relationship with Mayor Campana deteriorated.[33] Thereafter, Plaintiff alleges that Chief Young announced his resignation from the WBP.[34] Mayor Campana eventually hired Damon Hagan as the new Chief of Police.[35] Plaintiff alleges he was subsequently "targeted, investigated, harassed, and ultimately severely disciplined unfairly" in retaliation for his history of speaking out in favor of police reform.[36]

---

[28]  *Id*. at ¶ 14.
[29]  *Id*. at ¶ 17.
[30]  *Id*. at ¶ 19.
[31]  *Id*.
[32]  *Id*.
[33]  *Id*. at ¶ 21.
[34]  *Id*. at ¶ 23.
[35]  *Id*. at ¶ 24.
[36]  *Id*. at ¶¶ 25-29.

### 3.    Analysis

The claims in this action have changed slightly from the original complaint. Plaintiff asserts that he was retaliated against for engaging in free speech (Count 1) and for exercising his freedom of association (Count 2).  Although "public employees do not surrender all their First Amendment rights by reason of their employment"[37] the United States Supreme Court has noted the need to strike a "careful balance 'between the interests of the [employee], as a citizen, in commenting upon matters of public concern[,] and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"[38]

In order to establish a First Amendment retaliation claim, "a public employee must show that (1) his [activity] is protected by the First Amendment and (2) the [activity] was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the [activity] had not occurred."[39]  "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of

---

[37] *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see also Rankin v. McPherson*, 483 U.S. 378, 383 (1987) ("[A] State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.").

[38] *Lane v. Franks*, 573 U.S. 228, 236 (2014) (first alteration in original) (quoting *Pickering v. Bd. Of Ed.*, 391 U.S. 563, 568 (1968)).

[39] *Falco v. Zimmer*, 767 Fed.Appx.288, 299 (3d Cir. 2019); *see also Dougherty v. School Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014).

public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made."[40]  Accordingly, the first question for this Court is whether Plaintiff's statements were made in his role as an employee, or his role as a citizen.  If Plaintiff spoke as an employee, his First Amendment claim must fail at step 1.[41]

### a.    Plaintiff's speech was not protected.

Defendants suggest that Plaintiff's claim must fail because: (1) the speech at issue is not constitutionally protected; (2) there was no retaliatory conduct; and (3) there is no causal link between any alleged speech and retaliatory conduct. Therefore, I begin with the question of whether Plaintiff engaged in protected speech.

First, I consider whether Plaintiff spoke as a citizen or pursuant to his official duties.  "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[42]  Under *Garcetti v. Ceballos*, this Court must engage in a "practical" inquiry; this does not turn merely "on an employee's formal job description."[43]  As

---

[40]  *Hill v. Burough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) (internal quotation marks omitted) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).
[41]  *Garcetti v. Ceballos*, 547 U.S. 410 (2006).
[42]  *Garcetti*, 547 U.S. at 421 (2006).
[43]  *Lahovski v. Rush Tp.*, 441 F.Supp.3d 43 (M.D. Pa 2020) (Mannion, J.).

noted by my colleague, the Honorable Malachy E. Mannion of this Court, "[e]xpression does not have to fall within a public employee's job description or response to an employer's inquiry in order to constitute speech made pursuant to the speaker's official duties."[44]  Instead, the Court should consider factors such as "employee's duties, the impetus for his or her speech, the setting and subject matter of that speech, and the identities of the individuals to whom that speech is addressed."[45]  In determining if the alleged speech is protected, I may also consider "whether the speech was made inside or outside of the work place and whether it concerned the subject matter of the speaker's employment."[46]

Plaintiff's complaint alleges that he "worked under and closely with Chief Young [and others] and was a vocal supporter of the[ir] policies of police reform."[47]  Plaintiff's complaint is largely devoid of the details necessary to support an argument that his speech was made as a citizen.  Plaintiff states that his job was to "broadly implement progressive management."[48]  Beyond this, however, all Plaintiff provides are vague assertions that he "spoke out publically" [sic] in support of reform and against unethical behavior.[49]  If anything, based on his allegations, it appears that he spoke as an employee; he shared his concerns

---

[44]  *Id*. (citing *Weintraub v. Board of Education*, 593 F.3d 196, 203 (2d Cir. 2010)).

[45]  *Id*. (citing *Brown v. Tucci*, 960 F.Supp.2d 544 (W.D. Pa. 2013)).

[46]  *Brown v. Tucci*, 960 F.Supp.2d 544, 576 (W.D. Pa. 2013).

[47]  Doc. 25 ¶ 13.

[48]  *Id*. ¶ 17.

[49]  *Id*. ¶ 14.

with "colleagues, supervisors, members of the City Council and administration, and members of the public."  Examining the individuals he spoke to,[50] most of them appear to be in his professional circle, and he would have made those statements in his capacity as an employee.  Plaintiff has certainly not pled otherwise.

In briefing, Plaintiff bolsters this interpretation, arguing that he "acted as a close assistant to Chief Young in attempting to change the culture" and "ruffled many feathers" by "exposing fraud, waste, abuse, mismanagement" and other problems.[51]  Curiously, the allegations about fraud and mismanagement are not pled where Plaintiff cites to[52] – nor, indeed, are the words "fraud" and "mismanagement" found anywhere in the FAC.[53]  But even taking Plaintiff's argument at face value, it suggests that this speech was made in his role as a "close assistant" to the Chief of Police, his supervisor.

Plaintiff has not pled facts that would allow this Court to find that the statements were anything *other* than made within the scope of his employment. That Plaintiff was not specifically "tasked to speak or transmit information"[54] to those officials does not lead to the conclusion that this speech was outside the

---

[50]  *See Brown v. Tucci*, 960 F.Supp.2d 544, 576 (W.D. Pa. 2013).

[51]  Doc. 31 at 2.

[52]  Plaintiff directs the Court to Doc. 20 ¶ 19.  The Court assumes this is simply a typographical error and Plaintiff meant Doc. 25, the FAC.

[53]  The word "abuse" is used in the FAC, but never in the context of any impropriety Plaintiff claims he exposed.

[54]  Doc. 25 ¶ 17.

scope of his job as a police officer, particularly when juxtaposed with his allegation that his job was to "implement progressive management."[55]  Plaintiff pleads no other facts that would lead to the inference that he spoke out as a citizen rather than as an employee.

Plaintiff argues that "there was non-criminal mismanagement, unethical behavior, waste of public resources, and dysfunction in the operations of the WPD and that he was punished for speaking out as a citizen on these matters."[56]  But Plaintiff's argument misses the mark; the controlling question is not whether the conduct at issue was necessarily criminal. Rather, it is whether the speech fell within the scope of Plaintiff's employment.  The answer to that question, according to Plaintiff's pleading, is at best unclear, but more accurately: "yes."  Plaintiff cannot use the vagueness of his own complaint to avoid dismissal.

Furthermore, Plaintiff's attempt to conflate the various elements that he must establish is unavailing.  He must show that he both spoke as a citizen *and* that he spoke on a matter of public concern.  The fact that something is of public concern does not, in and of itself, mean that an employee spoke out as a citizen. Accordingly, his argument that "[a]s a citizen, [Plaintiff] should be encouraged to bring such information into the public view"[57] carries little weight, as it does not support any of the elements at issue.

---

[55]  *Id.*
[56]  Doc. 31 at 7.
[57]  *Id.* at 8.

Plaintiff's other argument also falls flat.  He claims that he "criticized the city government's management of police affairs" and "criticized an 'old guard' of police officers as lazy, incompetent etc. [sic]."[58]  But the word "lazy" (or any variant thereof) never appears in the complaint; the word "incompetent" (or any variant thereof) appears just once in a conclusory statement, wherein Plaintiff suggests that he engaged in free speech.[59]  Otherwise, neither of these "criticisms" are found anywhere in the pleading.  But this argument also does not answer the question of whether Plaintiff's criticism was made within the scope of his employment.

Again, the Court asks: what is in the pleading?  Plaintiff's allegations that he raised concerns regarding issues of misconduct and that he was supposed to implement reforms.[60]  Despite Plaintiff's protests to the contrary, this case is not "clearly distinguishable" from *Lahovski v. Rush Tp.*, or other well-established precedent.  It is telling that Plaintiff was not able to point to a single case as an example that this sort of speech is protected under the First Amendment to the United States Constitution.  Plaintiff's speech about the issues he was seeking to reform is not plausibly pled to be outside the scope of his employment.

Even if Plaintiff had sufficiently pleaded that he engaged in protected speech, he fails to establish any causal connection between his alleged speech and

---

[58]  Doc. 31 at 8.
[59]  Doc. 25 ¶ 35.
[60]  *Id*. ¶¶ 17-19.

any retaliatory conduct. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.... In the absence of that proof the plaintiff must show [(3)] that from the evidence gleaned from the record as a whole the trier of the fact should infer causation."[61]

Generally, this element "presents a question of fact for the jury. But, at this motion to dismiss stage, [Plaintiff] must only produce some evidence, direct or circumstantial, of this element that is enough to raise a right to relief above the speculative level."[62] Defendants argue that Plaintiff's complaint does not plead sufficient facts to satisfy this requirement. I agree.

First, Plaintiff did not respond to the argument raised by Defendants as to causation. By failing to respond to Defendants' argument on this issue, this portion of Defendants' motion to dismiss is unopposed.[63] However, even had Plaintiff opposed, he would have failed, because his complaint is devoid of any sort of timeline that the Court could use to evaluate causation. Plaintiff

---

[61] *Lauren W. ex rel. Jen W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (internal quotations and citations omitted).

[62] *Falco v. Zimmer*, 767 Fed.Appx.288, 310 (3d Cir. 2019) (internal quotations and citations omitted).

[63] *See* M.D. Pa. L.R. 7.6; *see also Sikkelee v. Precision Airmotive Corp.*, 2011 WL 1344635 at *4 (M.D. Pa. Apr. 8, 2011) (dismissing claims as unopposed when the plaintiff failed to respond to arguments made by the defendants in support of their motion to dismiss*); Lada v. Delaware Cnty. Cmty. Coll.*, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested.").

specifically points to two incidents which he claims were retaliatory. He does not provide any dates for when these events took place. It is impossible to determine whether there is an unusually suggestive temporal proximity. Furthermore, without the chain of events more clearly described, the Court cannot infer causation. For both of these reasons, the Court does not find that Plaintiff has pled facts supporting a finding of causation and finds that the claim would independently fail on this ground.

### b. Plaintiff's association claim fails because it is coextensive with his speech claim.

Plaintiff also raises a claim of retaliation in violation of his freedom of association. Such a claim, however, "should be dismissed when it is coextensive with the plaintiff's freedom of speech claim."[64] Defendants argue that the two claims are coextensive. Their argument succeeds for two reasons: (1) Plaintiff did not oppose it in his brief; and (2) Defendants are correct.

Plaintiff did not address in his opposition the argument that the two claims are coextensive. Again, by failing to respond to Defendants' argument on this issue, this portion of Defendants' motion to dismiss is unopposed.[65] That alone is sufficient to dismiss this claim.

---

[64] *Myers v. City of Wilkes-Barre, PA*, 448 F.Supp.3d 400, 416 (M.D. Pa. 2020).

[65] *See* M.D. Pa. L.R. 7.6; *see also Sikkelee v. Precision Airmotive Corp.*, 2011 WL 1344635 at *4 (M.D. Pa. Apr. 8, 2011); *Lada v. Delaware Cnty. Cmty. Coll.*, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009).

But Defendants also find support for their proposition in both the FAC and Plaintiff's brief in opposition to the motion to dismiss.  The FAC alleges, as discussed above, that Plaintiff engaged in protected speech by criticizing certain individuals.  It also claims that Plaintiff "engaged in protected activity of association by associating with [three other individuals] as critics of the management of the police department and city government . . ."[66]  Plaintiff argues that "he engaged in constitutionally protected conduct – critical speech of the administration and WPD as well association *for this purpose* with his fellow Plaintiffs."[67]  This indicates that the association claim is coextensive with the speech claim.  Plaintiff's briefing repeatedly connects the two claims.  They are not "independent and distinct" from one another.[68]  Because they are coextensive, this claim cannot survive.

## III.   CONCLUSION

Based on the complaint, I find that because Plaintiff's alleged speech was made within the scope of his employment, it is not protected.  Furthermore, Plaintiff has not established causation.  Therefore, Plaintiff's First Amendment claims fail.  Defendants' motions to dismiss are granted.  Defendants' motion to strike is denied as moot.

---

[66]   Doc. 25 ¶ 42.
[67]   Doc. 32 at 5 (emphasis added).
[68]   *Myers*, 448 F.Supp.3d at 416.

Leave to amend is denied.  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[69]  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.[70] Although there is a "liberal pleading philosophy of the federal rules" a court will dismiss the amended complaint in its entirety with prejudice because another opportunity for amendment would be futile.[71]  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.[72]  Plaintiff has had two chances to plead a cognizable claim.  His theory of the case remains unchanged despite this Court's previous holding, and it appears that it would be futile to amend.  Furthermore, the Court finds that requiring Defendants to brief this matter a third time would result in prejudice.  Accordingly, leave to amend is denied.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[69]   *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir.1993).

[70]   *Burlington*, at 1434. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*; 3 Moore's Federal Practice, supra § 15.15[3], at 15–47 to –48 (3d ed.2000).

[71]   *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

[72]   *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).